**SERVICE LIFE INSURANCE COMPANY, Appellant,**

v.

**Len B. MILLER, Appellee.**

**No. 15541.**

Court of Civil Appeals of Texas.

Fort Worth.

Sept. 10, 1954.

Rehearing Denied Oct. 8, 1954.

McGown, Godfrey, Logan & Decker and Jack E. Hightower, Fort Worth, for appellant.

Horace B. Houston, Jr., and Ben Atwell, Dallas, for appellee.

MASSEY, Chief Justice.

From a judgment in favor of an insurance agent on his suit against a defendant insurance company for "override" commissions on life insurance sales by a third party subagent during a certain period, the Company appealed.

Judgment reversed and rendered.

Len B. Miller was, at all times material to the case, a life insurance agent operating under written contracts with the Service Life Insurance Company in so far as concerned business he wrote directly with policy holders. His connection with such company under his written contracts had progressed to such a point that he was earning, as commission for sales of insurance effected by him, 75% of the first annual premium.

The Company was engaged in promoting sales of insurance to personnel of the armed forces, and in so far as this cause is concerned, the territory of operations was Camp Pendleton, California, where Miller was quite successfully engaged in writing such business. At the same time there were other men, connected with other companies, writing similar lines of business at Camp Pendleton. Miller became acquainted with two of these men. Their names were West and Martin. They were dissatisfied with the arrangements they had with the Company they represented. Miller promoted the making of a contract between both West and Martin and the Service Life Insurance Company. This occurred in June of 1951. He did so at the instance of an official of the Company, and upon the agreement of such official that if he successfully negotiated the contract he would receive for his services 10% overriding commission on life insurance sales that West and Martin made at Camp Pendleton for the Company. The jury found that the agreement was for the payment of such overriding commissions to date of November 1, 1951. Miller became dissatisfied with the business being done at Camp Pendleton on date of August 27, 1951, and gave up Camp Pendleton as a place or territory in which he worked in the insurance business.

He left the State of California. After he gave up the said territory and left the state, the Company negotiated new contracts with West and Martin covering Camp Pendleton, under the terms of which it agreed to pay 75% commission rather than the 65% commission they had been paid prior to August 27, 1951. West and Martin made sales between that date and the date of November 1, 1951, 10% commission upon which amounted to $4,761.21. Miller claimed that he was entitled to such as his commission due and owing as overriding commissions on business produced by West and Martin under the agreement with the Company in June of 1951. The Company contended that he was not entitled to such commissions because the agreement included the provision that Miller should not be entitled to overriding commissions on business produced by West and Martin at Camp Pendleton after he ceased to perform the services of a general agent at Camp Pendleton. Miller filed his suit to collect the commissions.

It was undisputed that the overriding commissions were paid Miller to September 1, 1951.

The jury found that by the terms of the agreement of June, 1951, plaintiff was entitled to receive the overriding commission of 10% on the business written by West and Martin at Camp Pendleton until November 1, 1951, as compensation for negotiating the contract between the defendant Company and West and Martin; that the agreement, was an oral agreement, in addition to the written contracts the plaintiff had with the Company, concerning the business plaintiff wrote directly; and that under the terms thereof it was further provided that plaintiff should remain at Camp Pendleton and perform the services of a general agent in order to be entitled to the overriding commission. The jury further found that plaintiff Miller left Camp Pendleton on or about August 27, 1951.

The defendant Company had a motion for judgment based upon the verdict, which judgment the defendant contended should be a "take nothing" judgment because under the jury's findings the plaintiff would not be

entitled to anything subsequent to August 27, 1951, the undisputed evidence having demonstrated that he was paid all the over-riding commissions due and owing to him on the business produced by West and Martin prior to that date. The defense motion was overruled and judgment was entered for plaintiff for the sum of $4,761.21.

The Company appealed and is before us as the appellant.

Appellant's appeal is actually predicated upon its contention that the verdict would support only a judgment in its favor. It presents other points which are immaterial in view of our disposition of the case.

Our problem with regard to the record is simplified in view of the fact that we may consider every special issue submitted to be one which was raised by evidence, since neither party ever filed any motion in the trial court to disregard any answer to any issue as having no support in the evidence as would be required by T.R.C.P. 301, if it were contended that there was insufficient evidence to raise an issue. Furthermore, since neither party raises any contention on appeal that the evidence supporting the answers found by the jury in their verdict was in any respect insufficient to support the verdict or a judgment based thereon, we may regard every answer to the special issues as amply supported by the evidence. Therefore, we should look at the verdict and the individual findings of fact thereof in light of the pleading upon which the same is based, and in light of the evidence adduced upon the trial, and thusly in light of the whole record we should construe such verdict in determination of whether the judgment entered thereon was correct. And from the verdict so returned and construed will the judgment be compelled if it will support a judgment. T.R.C.P. 300, 25 Tex.Jur., p. 489, sec. 106. No finding of the verdict may be disregarded except through proper procedure under the provisions of T.R.C.P. 301. See Hines v. Parks, Tex.Com.App. 1936, 128 Tex. 289, 96 S.W.2d 970, and cases under the Rules by Julius F. Franki. This is, of course, the case as to a special issue supported by the pleadings, or tried and submitted without objection, and where it is upon an ultimate rather than an evidentiary finding.

The rules for construction of special issues are not peculiar, but are those applicable generally to written instruments, with such qualifications and limitations as the nature of the instrument—the court's charge—requires. Foremost perhaps of the general rules is that the individual issue is to be construed according to the ordinary import of the words used, in the light of the pleading upon which it is based, and in light of the evidence that has been heard to support or overthrow it. Closely following this is that the issues as a whole are to be construed with reference to every other, so that all may stand separately and collectively and that there will be no unseemly conflict of parts whatsoever, and furthermore, of course, each issue will be construed in the light of the entire instructions, explanations or definitions accompanying the issues. This is but another form of stating the general rule that every written instrument is construed with respect to every other part thereof. Speer's Special Issues, sec. 208. See also Vincent v. Bell, Tex.Civ.App., Waco, 1929, 22 S.W.2d 753, error dismissed, and cases there discussed.

Appellee plead that he acted for the appellant Company as its general agent in negotiating the contracts with West and Martin for the appellant; that by agreement he was entitled to receive 10% overriding commissions on business West and Martin wrote at Camp Pendleton; and that he received said commissions to date of September 1, 1951, and not thereafter. Appellant plead that while it agreed to pay 10% overriding commissions to the plaintiff on business West and Martin wrote at Camp Pendleton, it did so subject to the general custom prevailing throughout the life insurance industry, which general custom was well known to the appellee, to wit, that the 10% overriding commission was payable only so long as the person entitled to receive it remained at the point where the business was being produced and while remaining there supervised the work of the subagents and helped

them to obtain interviews with prospective purchasers of insurance and made available to such subagents opportunities of contact with prospective purchasers. Appellant plead further that said general custom did not include obligation to pay the overriding commissions to such a person who should abandon the territory, and in the event of such abandonment the obligation of the insurance company to pay overriding commissions terminated.

Appellee testified that his oral agreement provided that he was to get the overriding commissions for one year, whether or not he performed any duty of a general agent. Appellant's agent, who promised the 10%, testified no time for the payment of 10% overriding commissions was ever specified. By cross-examination of a witness for the appellant, the appellee proved that it was the general custom in the business of writing life insurance that overriding commissions are paid to a person acting as a general agent for services rendered as such, being or including the training of agents, helping them, and supervising them. Other evidence adduced by the appellant was to the effect that it paid the overriding commissions only while a person entitled to them was performing as general agent and attending the duties of a general agent as so indicated.

█ Though in some respects the evidence adduced upon the trial might seem somewhat insufficient, yet we must consider it to have been full and satisfactory in view of the fact that any insufficiency must be deemed to have been waived because not raised.

Application of Judge Speer's principles of construction to the verdict and its various parts, considered in light of the whole record, indicates to our mind that the jury meant to find and did find that appellee had an agreement with appellant Company for the payment of 10% overriding commissions on the business produced by the subagents West and Martin at Camp Pendleton, and that such agreement to pay overriding commissions was effective to November 1, 1951. However, the agreement to pay over-

riding commissions to November 1, 1951, was conditioned upon appellee's remaining at Camp Pendleton and while so remaining, performing the services of a general agent in aiding and helping and supervising the subagents upon whose production the overriding commissions were being paid. In other words, the agreement was that appellee would no longer receive overriding commissions on the production of West and Martin after such date as appellee left Camp Pendleton, which was the territory from which he was to receive overriding commissions. Since the jury found that appellee left Camp Pendleton on or about August 27, 1951, and since the evidence indisputably establishes that at the time he left he had no intention to return to Camp Pendleton, or to afterwards perform any services to West and Martin which would be services normally performed to subagents by a general agent, and since it was further indisputably established that the appellee never thereafter offered or attempted to perform any of such services to West and Martin, then the findings of the jury must be construed to mean that perforce the condition of the agreement relating to the overriding commissions, appellee was not entitled to such commissions after the date found by the jury as that upon which appellee gave up Camp Pendleton. In other words, the appellant did not owe such commissions after August 27, 1951.

█ We take occasion to point out that the appellant deemed his affirmative defense presented by the special issue inquiring as to whether obligation to pay overriding commissions was conditioned upon appellee's remaining at Camp Pendleton and continuing to perform the duties of a general agent. It was the only issue upon this affirmative defense and was satisfactory to appellant and appellee did not complain of it. It and the answer given thereto must be given effect if it is possible to do so under the rules of law, for otherwise the appellant would be deprived of the affirmative defense which he undoubtedly thought was given him by the issue submitted. Hancock v. Sammons, Tex.Civ.App., Fort Worth, 1954, 267 S.W.2d 252, error refused, n. r. e.

Since the appellee's judgment is for the recovery of overriding commissions between September 1, 1951, and November 1, 1951, then no part of the commissions awarded to him by the judgment was due and owing to him. This period would be after the period during which the appellant owed him any obligation under the oral agreement.

Therefore, the judgment entered in favor of the appellee for such commissions was erroneous. The judgment should have been rendered for the appellant.

Judgment of the trial court is reversed, and judgment is here rendered for the appellant Service Life Insurance Company, and that the appellee Len B. Miller take nothing by his suit.