HORACE MANN MUTUAL INSURANCE COMPANY, Appellant,

v.

ESTATE of Earl L. ANDRESS, Deceased, and Elsye Andress, Appellees.

No. 8505.

Court of Civil Appeals of Texas, Amarillo.

June 16, 1975.

Evans, Pharr, Trout & Jones, Lubbock, Charles B. Jones, Lubbock, for appellant.

Garner, Boulter, Jesko & Purdom, Lubbock, Thomas J. Purdom, Lubbock, for appellees.

ROBINSON, Justice.

Judgment on the jury's verdict was rendered for plaintiffs, the Estate of Earl L. Andress, Deceased and Elsye Andress, for benefits under an insurance policy providing coverage in the event of the death of the insured resulting directly and independently of all other causes from bodily injury caused by accident and sustained while in an automobile. Defendant, Horace Mann Mutual Insurance Company, appeals. Affirmed.

Defendant claims that the death of Earl L. Andress was due to a heart attack and by no evidence and insufficient evidence points of error challenges the submission to the jury of Special Issue No. 1 and the jury's response to that issue. The issue and the jury's answer are as follows:

### "SPECIAL ISSUE NO. 1"

"Do you find from a preponderance of the evidence that the death of Earl L. Andress on January 1, 1973, resulted, directly and independently of all other causes, from bodily injury, if any, caused by the automobile accident of January 1, 1973?

Answer "We do" or "We do not."

Answer: <u>We do</u>

"In connection with the foregoing Special Issue you are insructed that death resulting from accidental bodily injury directly and independently of all other causes occurs when the death is the reasonable and natural consequence of accidental bodily injury and but for which such death would not have occurred. No other causes may be joint, contributing or concurring causes. However, such death can occur from accidental bodily injury directly and independently of all other causes even though disease or disorder may have been present if such disease or disorder is so remote in the scale of causation or dormant and insubstantial, or so temporary and transient that it does not materially contribute to the death in question."

Plaintiff had the burden of proving that the death of Earl Andress resulted directly and independently of all other causes from bodily injury sustained in the automobile accident in question. The instruction given by the trial court correctly sets out the meaning of the phrase "directly and independently of all other causes" when used in accident insurance policies. Stroburg v. Insurance Company of North America, 464 S.W.2d 827 (Tex.1971); Mutual Benefit Health & Accident Ass'n v. Hudman, 398 S.W.2d 110 (Tex.1965); Pyramid

Life Insurance Company v. Alexander, 337 S.W.2d 813 (Tex.Civ.App.—Texarkana 1960, writ ref'd n. r. e.); Commonwealth Casualty & Ins. Co. v. Laurence, 223 S.W.2d 337 (Tex.Civ.App.—Fort Worth 1949, n. w. h.).

■ In determining whether the evidence raised the issue for submission to the jury, the evidence must be viewed in the light most favorable to the party with the burden of securing the findings, disregarding contrary evidence and inferences. Anderson v. Moore, 448 S.W.2d 105 (Tex.1969); Tripp v. West Texas Utilities Company, 461 S.W.2d 224 (Tex.Civ.App.—El Paso 1970, writ ref'd n. r. e.).

The statement of facts includes evidence of the following facts: On January 1, 1973, Earl L. Andress loaded some wood from an old fence into his pickup. There was no indication that he had overexerted himself by this activity. As he drove towards his home he was observed as he leaned over in his pickup to the right. The pickup went over the curb and struck a mail box. As he went over the curb, he raised up. After the initial impact with the mail box, the pickup proceeded 110 feet across the parking lot and came into collision with one car knocking it sideways into a pickup. That pickup was knocked sideways into another car. The outside mirror on the left side of the Andress pickup was left at the mail box. The windshield of Mr. Andress's pickup was broken and the dash was caved in just under the broken windshield. The photographs of the vehicles, which were introduced in evidence, as well as the testimony, show a severe impact. Immediately, following the collision, Mr. Andress was found lying face down on the floor board of the pickup. One of his shoes was off. He had a large bruise over the nose, two smaller bruises over his left eye and a large bruise over the upper right side of his forehead. There was a bruise on his chest about the size of a fist near the center of the sternum. He was still breathing faintly when the police arrived shortly after the collision, but was dead on arrival at the hospital. The family asked for a full autopsy after the body was embalmed and after the funeral. When told that it was too late for a full autopsy, they authorized a cranial autopsy. The autopsy report showed swelling of the brain which, together with the multiple bruises on the head, was compatible with a degree of cerebral concussion. In the opinion of the pathologist the head injuries could. contribute to death, but were not sufficient to cause death.

The evidence shows that Mr. Andress was a physically active man who cut trees regularly for himself and other people. In 1967, he went to his family doctor, Dr. Wallace Hess, for treatment of high blood pressure. Dr. Hess saw Mr. Andress last on May 15, 1971, about a year and a half before his death, at which time Mr. Andress was free from symptoms and his blood pressure was normal. Mr. Andress continued to take the medicine given him by Dr. Hess up to the day of his death. He had no dizziness, heartburn, or other complaints. Dr. Hess testified that while hypertension is one factor that predisposes to heart attack, it does not by itself, make a heart attack likely.

Dr. Hess was the only doctor who testified. After being qualified as a medical expert, he was asked to asssume facts in a lengthy hypothetical question outlining Mr. Andress's medical history, the sequence of events leading to the collision, the nature of the damage to the vehicle, and the condition of Mr. Andress's body following the collision. Asked to assume those facts and state his opinion based on reasonable medical probability as to the cause of death of Earl L. Andress, directly and independently of all other causes, Dr. Hess stated, "It is my opinion that he died accidentally from injuries received." He also testified that it was possible, but not probable, that Mr. Andress had had a heart attack.

No objection was made to the hypothetical question as it was finally asked, and

**50**

there was no objection to the answer to that question. Defendant does not now challenge the evidentiary support for the facts as stated in the hypothetical question but contends that Dr. Hess's opinion was derived from speculation and conjecture, assumed facts not in evidence, covered matters not the proper subject of expert testimony, invaded the province of the jury, and was based on impermissible inferences of fact unsupported by any competent evidence.

We overrule those contentions. Both the opinion that Mr. Andress did not have a heart attack and the opinion that his death was caused by injuries received in the collision were the proper subjects of expert medical testimony. Community Life & Health Insurance Co. v. McCall, 497 S.W.2d 358 (Tex.Civ.App.—Amarillo 1973, writ ref'd n. r. e.); Watson v. State, 149 Tex. Cr.R. 643, 197 S.W.2d 1018 (1946). The opinion of the expert upon a proper subject of expert testimony is admissible even though it is on the ultimate issue of fact to be determined by the jury so long as, in giving his opinion, he does not state a conclusion necessarily based upon an inference which he is unauthorized to make. Adamson v. Burgle, 186 S.W.2d 388 (Tex.Civ.App.—San Antonio 1945, writ ref'd w. o. m.). In the case before us, in response to a direct question concerning the basis for his opinion, Dr. Hess testified that it was based on the question asked by the attorney and on reasonable medical probability. We conclude that there was evidence which required the submission of the issue in question to the jury.

After a consideration of all of the evidence including that opposed to the verdict as well as that favoring the verdict, we conclude that the jury's answer to the issue is sufficiently supported by the evidence and is not against the great weight and preponderance of the evidence. Each of appellant's points of error is overruled.

The judgment of the trial court is affirmed.